May please the court. I'm Michael Sussman. I'm here for the appellants in the Panzella case. Happy holiday to all of you. Happy holidays. Thank you. At JA 134 in dismissing the amended complaint, the district court wrote that River Rose and Pride of the Hudson were not quote roughly equivalent and stated the following quote, the only alleged benefit that the Pride of the Hudson received from the city is help in finding dock space, but plaintiffs do not allege that they requested such assistance from the city and were denied. Respectfully, this is a fundamentally erroneous construction of the complaint. At paragraph 81 of the amended complaint at JA 20, the complaint makes clear that River Rose has consistently sought assistance from the city with respect to dock space, which the city in fact with respect to River Rose had obliged itself to provide in two very concrete forms, through extension of municipal utilities to dock vessels and through the maintenance and upkeep of a dock to pages JA 43 and JA 40 in exchange for $10,000 a year which River Rose was going to pay the city. The district court judged the absence of a contract, and again I'm at JA 134, between Pride of the Hudson and the city as quote sinking, an interesting term given the case, the rough equivalency analysis. Can I ask you about your comparator? Yes. The comparator, you identify one comparator. That's correct. And that's the Pride of the Hudson. That's correct. And what other specific facts, sort of continuing on from I think as you were beginning, explaining, regarding the Pride of the Hudson that are alleged, the relationship between the Pride of the Hudson with the city of Newburgh, the timing, the terms or timing of any agreements entered into by the city of Newburgh. In 2014 and 15, the complaint specifically alleges that the city of Newburgh assisted and facilitated the Pride of the Hudson, which the complaint explains is a vessel similar in function and use to the River Rose. Assisted them in what respect? It gave them dock space? Yes. It not only gave them dock space, at one point the city manager made clear that it viewed River Rose's docks as the city's dock for purpose of facilitating dock space for Pride of the Hudson. River Rose had dock space. Pride of the Hudson had dock space. The city had an agreement, a long-standing agreement, with my client to provide not only dock space. But that immediately makes it non-comparatible. That is, what is comparable is providing dock space. You say you had a contract that required them to do more and they didn't do it. We didn't, we didn't, the city didn't, just so it's clear, the city didn't provide my client dock space. And you have to go to slightly more abstract proposition than what you're advancing respectfully. The city did essentially nothing for my client to foster and facilitate a enterprise which was plainly within the city's interest. That is, developing the waterfront. The city, the complaint alleges, did everything contrary to that to stop my client from making constructive use of the waterfront. My client had docked on the city's waterfront. After that, the city was to take certain steps which would facilitate the use of that dock on the waterfront and didn't... All that is fine, but I'm trying to find out how Pride of the Hudson was situated in the same way that your client was. I'll explain it to you. Dock, dock, dock, no, they didn't both have boats. Dock of the Hudson, I mean, excuse me, Pride of the Hudson was an entity that was attempting to run river cruises like my client and needed dock space. One would expect that the antecedent user, my client, without the maliciousness which the complaint explains toward my client, would have received from the city cooperation in making that same operation possible. The opposite was true. At every turn when the There is no doubt that the city treated Pride of the Hudson in some ways differently from the way they treated you, but that isn't the same as saying that Pride of the Hudson is a level of similarity comparator that we require for equal protection law standard one. Well, I disagree. I think that it is comparable, and I think that the fact that they were at different stages of their relationship with the city does not make them incomparable. That the fact of the matter is that absent... But it goes beyond that because the breach had gone on for a period of time before the city showed favoritism. Wouldn't a comparability require some sort of contractual relationship with the other entity that was comparable to yours that they honored? No, because... I'll explain why. The city, in the case of my client, abjured the contract. They indicated that there was not going to be contractual circumstance with my client. They tried to run away from the contract. So the way I analyze the situation is you have one entity which is trying to do business on the waterfront, which is my client. That entity has certain needs which it has articulated and explained to the city repeatedly. The city refuses categorically to meet those needs out of the hostility which is pled in the complaint. You have another user who's doing the same thing. They're running tours out of the waterfront for the city. They want to. With respect to that user, the city... And again, I said it's at a somewhat different level of abstractness than Judge Calabresi's question suggests. The city is doing everything it can to facilitate that entity's use of the waterfront. So with regard to that, they're absolutely comparable entities. And the fact that they are engaged in somewhat different... somewhat different, again, roughly equivalent is the standard the district court accepted. The fact that they're engaged in somewhat different needs with respect to the city at a particular point in time does not dissuade the comparison legally. It should be understood. Because if you had a different analysis than what you'd see, what happened here, in fact, is that the city is able to effectively, out of this motive, get my client in a very disadvantaged position as to a new... another new entity which is doing precisely the same thing it's doing. So there is a... there is a rough equivalence. The fact that one has a contract, frankly, Your Honor, the way I view the situation only makes that more acute, not less acute. Because the city, in order to engage in the favoritism against the other entity, has to essentially reject the contract with regard to my client and reject the provision of services which were essential for my client. I believe that summarizes the argument. Thank you. Good morning, Your Honors. David Posner for the City of Newburgh. As Your Honors are aware, Judge, the district court, in granting our motion to dismiss on the grounds that a equal protection claim was not adequately pled, determined that there was no need to even reach the statute of limitations issue, which we also advanced. I would like to just very briefly address that statute of limitations issue, which can resolve this case just as easily as affirming Judge Karas on the merits of his decision. What happened here is the city entered into an agreement with Mr. Panzella and Joe Mark in 2004. In 2010, it recognized that the agreement that they entered into, which called for an alienation of its waterfront property to him via this lease, was ultra vares, violated its charter, it violated the public benefits concept. They needed a state referendum, a state approval. They needed a public referendum. So they passed a public resolution, and I say public because the knowledge of Mr. Panzella is important, wherein they rescind it and they state why they rescind it, and they state these reasons, and then they say they still want to do business with him, but in terms of a license. Mr. Panzella, at that point, because the statute of limitations, when the party has reason to know that something's going on they don't like, they're being harmed, at that point when the city rescinded its agreement and stated why, the statute of limitations ran. He could have challenged that in an article 78. Where was the comparator at that time? There is no comparator. The alleged comparator. So there they had six years to bring a contract action in state court. That's the point you're making. Because, well, I think now you're on it. The equal protection claim requires more. It requires a comparator, and so that's why if his allegation were sound on the comparator side, I think we would be looking at the comparator, the existence of the comparator, to determine whether or not there is an equal And additionally, since the statute of limitation is an affirmative defense, we're reluctant to decide it on 12b-6, precisely because there may be facts, like the comparator came into existence later, which would make a later time. That's why we don't decide a statute of limitation on 12b-6 unless it is the reasons Judge Walker gave doesn't seem to be this case. So I don't quite know why . . . Let's address the comparator issue and the reason the district court dismissed the case. Well, we're not talking . . . Now, you're leaving the statute of limitations? Yes. Okay. Can you tell us about the Pride of the Hudson's contractual relationship with the city of Newportburg, and if any, and how its relationship is similar to or different from the plaintiff's? Well, I can only tell you . . . I mean, I could tell you a little bit about what I know, but what's alleged in the complaint . . . What can you tell us? I can tell you that the complaint alleges that the city of Newportburg assisted . . . that's the word used in obtaining dock space. That's the exact phrase. Assisted it in obtaining dock space. It doesn't say even where the dock space is, whether it's on city property or not. It doesn't say how they assisted them or what they did. It doesn't indicate that Pride of the Hudson needed any permits, needed any improvements, or was just renting a dock, paying a fee for service. Docks its boat, pays 50 bucks or whatever the permit fee is for that docking. The complaint alleges nothing about Pride of the Hudson. Your Honors are asking that question of me because the state litigation, which is certainly before your Honors, the state courts determined that it was Pride of the Hudson that . . . I'm sorry, it was River Rose, the plaintiff, who was in violation of the contract and the city's obligations to perform and provide these utilities to the dock had not yet materialized because all the conditions precedent in the contract, the plaintiff had not performed. That's the Joe Mark litigation, the appellate division decision in 2009, which affirmed summary judgment dismissing Joe Mark's state court litigation against the city saying they're in breach of contract. So the claims from in the complaint or advanced to you today that the city had done everything it could to put impediments in the way of Joe Mark simply is belied by the record, the earlier state court litigation. Giving somebody dock space is extremely bare bones allegation. What more should they have provided? The city? No. What more should they have said? They would have had to allege that their entity went, sailed through the permitting process, got whatever improvements it needed on its dock, whereas their client did not for these invidious motives that they allege. There's, you know, a canoer who comes in and may have to dock, may have to pay a docking fee at the public landing. I mean, there's nothing in this complaint to suggest that Pride of the Hudson went through any type of approval process. It just says it was assisted in getting dock space. That could be, hey, Ralph, I got a customer for you. Why don't you, I'm going to send Pride of the Hudson over. Maybe they'll dock at your dock. I mean, the complaint is a mystery as to what it alleges the city did for Pride of the Hudson. And it cannot possibly be more to suggest that it was treated the way River Rose was treated, which by everybody's acknowledgement, wanted utilities out on the dock, needed approvals and licenses. And we know from the state litigation that it was their fault that they didn't get them. And it was affirmed in the second department. And then the city did what it did in 2010, and River Rose just keeps saying, we want the original agreement enforced. You have to comply with this original agreement. And, you know, we don't think there's an equal protection claim there yet. Thank you. The 2009 appellate division litigation relates to facts that stopped in August of 2004. So in regarding that in any way, I'd like the court to keep that in mind. Counsel says that we didn't meet certain terms. The facts that were discerned there were up through August 2004. Our complaint makes clear what happened thereafter in terms of the invidiousness. But let me address specifically the I think this depends on the level of generality or specificity that you need and believe you need at a pleading stage. Obviously, it's not a summary judgment motion. The heart of this matter is that the city of Newburgh took a position antithetical in every way, according to the well pled allegations, which are multifarious. There's all sorts of things explained in the complaint about what they did and didn't do to put obstacles in the way of my client. My client had a docked through his efforts at the city. He needed certain assistance from the city to materialize the city's own objective of better using its waterfront, which is the neutral principle here that I see from an Arlington Heights point of view. With regard to the other user, paragraphs 81, 82, 83, 91, 92 of the complaint explained that there was another vessel. The other vessel had the same exact purposes as my vessel, came to the city. The city assiduously assisted, as the language used, it in finding and utilizing appropriate dock space. In other words, one had this whole group of people opposing it, and I explained that extensively in the complaint. The other did not and had it silent on that. One was treated in one way. Another was treated in an entirely dissimilar way. In your complaint, do you say, do you show that the reasons that it was treated differently were different in one case than the other? You say they're both tour boats, and you say they're treated differently, but that doesn't make the two comparable under our case. When you say it doesn't make the two comparable, the two are doing the same thing. One is resisted assiduously by the city, the other is strenuously assisted by the city. When you say what more is needed, and when you say what's the motive, the motive is explained extensively with regard to the one who they're treating negatively. I don't know what would have happened if the pride of the Hudson had wanted permits, if they had built a dock and then sought to have the city take it over, and then they would lease it back for the payments. We don't know any of those things about pride of Hudson, because that's not part of it. That's not with experience. And as Your Honor pointed out, with regard to pride of the Hudson, when counsel was arguing the statute of limitations point, pride of the Hudson did not materialize in the city, according to the complaint, until 1415. I understand. And implicitly in the complaint, they did not ask for the same things. We understand that. But the point is one was treated in a manner which was entirely prejudicial. The other was treated in a manner which was entirely preferential. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. Final case on the calendar is on submission. The clerk will adjourn court.